# COURT OF APPEALS
## DECISION
## DATED AND FILED

## October 1, 2019

**Sheila T. Reiff**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP699**

**STATE OF WISCONSIN**

Cir. Ct. No. 2016CV956

**IN COURT OF APPEALS**
**DISTRICT III**

M. BLANK PROPERTIES, LLC,

PLAINTIFF-RESPONDENT,

V.

GEORGE COLE,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Outagamie County: MARK J. McGINNIS, Judge. *Affirmed and cause remanded with directions.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  George Cole appeals a judgment awarding money damages to his former landlord, M. Blank Properties, LLC (Blank).[1]  Cole contends the circuit court erred by: (1) denying his counterclaim that Blank unlawfully withheld his security deposit after Cole vacated his apartment; (2) finding that Cole's neglect caused water damage to a bathroom in the apartment; and (3) denying his retaliatory eviction counterclaim.  We reject Cole's arguments and affirm the judgment.  Further, because we conclude that Cole's entire appeal is frivolous, we grant Blank's motion for costs and reasonable attorney fees incurred in this appeal under WIS. STAT. RULE 809.25(3) (2017-18),[2] and we remand to the circuit court to determine the proper amount thereof. *See Lessor v. Wangelin*, 221 Wis. 2d 659, 669, 586 N.W.2d 1 (Ct. App. 1998).

## BACKGROUND

¶2     In October 2013, Cole entered into a written residential lease for the apartment with Blank.  The lease term was for one year, from December 1, 2013, to November 30, 2014.

¶3     During the term of the lease, Blank realized that Cole's wife, Jessica Cole, was not listed on the lease as an adult household member.  Accordingly, on June 13, 2014, Blank notified Cole that, pursuant to its rental policy, he "need[ed]

---

[1] We note that the parties are before us for a second time.  We previously reversed a judgment evicting Cole from the same apartment at issue in this appeal. *See M. Blank Props., LLC v. Cole*, No. 2015AP456, unpublished slip op. (WI App Dec. 8, 2015) (*Cole I*).  This appeal arises from a separately filed case, which Cole characterizes as "essentially the Rent & Damages portion" of *Cole I*.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise stated.

to make an appointment" to have Jessica complete a rental application and fill out lease paperwork.

¶4 A dispute between the parties arose over adding Jessica to the lease, and Blank contacted Cole at least six times between June and November 2014 in an attempt to do so. As of November 26, the issue remained unresolved. On that date, Cole emailed Blank explaining that Jessica would not be providing her social security number (SSN) to Blank "due to potential risks of data security and identity theft." That same day, Cole also mailed Blank a rent check for December.

¶5 At some point during the 2014 Thanksgiving holiday week, Blank showed a potential tenant, Patrick Hayden, units in the building where Cole's apartment was located. Then, on December 2, Michael Blank—Blank's president—emailed Cole stating: "Regarding the social security number, our policy per our attorney[-]written lease agreements states that social security numbers are required. … The reason you have not received the updated lease agreement is because we are unable to process the information with our system without the required information." One day later, Hayden signed an apartment holding agreement for Cole's specific unit.

¶6 The next day, an attorney hired by Cole, Linda Monroe, emailed Blank seeking "an amicable and sensible resolution of the [SSN] issue." On that same day, Blank issued a twenty-eight day termination of tenancy notice to Cole, pursuant to WIS. STAT. § 704.19(3). Two weeks later, on December 17, Blank issued Cole a fourteen-day termination of tenancy notice, pursuant to WIS. STAT. § 704.17.

¶7 On January 16, 2015, Blank initiated formal eviction proceedings against Cole in Outagamie Circuit Court case No. 2015SC172. The circuit court

granted Blank a judgment of eviction on February 13, 2015. We reversed that judgment in *Cole I*. Our reversal was based upon our conclusion that Blank had "created a month-to-month periodic tenancy when it accepted [Cole's] rent payments after expiration of his written lease [i.e., the rent check Cole mailed for December 2014] and it failed to give adequate notice before terminating the periodic tenancy." *Id.*, ¶1.

¶8 Meanwhile, prior to our decision in *Cole I*, Cole voluntarily vacated his residence on February 28, 2015. Three weeks later, Blank sent Cole a letter informing him that his entire $895 security deposit was being withheld. As grounds for that withholding, Blank cited a past due water bill in the amount of $635.48 and $2096.30 for "Damage to Bathroom."

¶9 Nearly eighteen months later, on September 8, 2016, Blank filed the lawsuit underlying this appeal. Blank sought a money judgment of $5426.38, based on its allegation that Cole "failed to pay utility bills, and caused damage to the apartment resulting in lost rent/storage fees."

¶10 Cole filed a counterclaim along with his answer to Blank's complaint, making two allegations relevant to this appeal. First, he alleged that Blank "wrongly withheld" money from his security deposit. Second, he alleged that Blank's decision to evict him was unlawful retaliation for the fact that he sought legal advice regarding the SSN dispute. Because Cole sought damages in excess of the small claims statutory limit in his counterclaim, the action was subsequently moved to the circuit court. After a two-day bench trial, the court ultimately entered a judgment in favor of Blank in the amount of $1754.44 and dismissed all of Cole's counterclaims. Cole now appeals.

**STANDARD OF REVIEW**

¶11 Cole's arguments on appeal essentially challenge the sufficiency of the evidence to support the circuit court's findings. We will not reverse a court's factual findings unless they are clearly erroneous. *See* WIS. STAT. § 805.17(2). Under the clearly erroneous standard, even though the evidence would permit findings of fact contrary to those of the court, the court's findings will be affirmed as long as there is evidence in the record that would permit a reasonable person to make the same findings. *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530. We will search the record for evidence supporting the court's findings, not for evidence opposing them. *Id.*

¶12 Where there is conflicting testimony on an issue, the fact finder— here, the circuit court—is the ultimate arbiter of the witnesses' credibility. *See Adams Outdoor Advert., Ltd. v. City of Madison*, 2006 WI 104, ¶27, 294 Wis. 2d 441, 717 N.W.2d 803. Although we defer to the court's factual findings, we independently apply the law to those facts. *Id.*

**DISCUSSION**

**I. Cleaning charges**

¶13 Cole first argues that the circuit court erred by denying his counterclaim that Blank unlawfully withheld two cleaning charges, totaling $179.87, from his security deposit. Cole begins his argument by noting that he "entered 31 color photographs into the court record to demonstrate the level of care and cleaning he took on vacating the residence." He then asserts that "the state of the house reflected in those photographs, and the dearth of any landlord photographs showing carpet abuse or damage proves that Cole had properly

cleaned the home and had nothing to hide." Based on his characterization of his photographic evidence, he contends that the "withholding of his security deposit for the two cleaning charges constitutes violations of WIS. STAT. § 704.28(3) and WIS. ADMIN. CODE § ATCP 134.06(3)(c)."[3]

¶14 As an initial matter, we note that Cole fails to reply to Blank's response that "the cleaning charges Cole now claims [Blank] wrongly withheld from his security deposit were never withheld." We could deem Cole's argument forfeited solely on that basis. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578. Nonetheless, we observe that Blank's argument—i.e., that Cole attacks a decision the circuit court never made—is well-taken. To explain, the court did not reject Cole's counterclaim because it determined that the $179.87 in clean-up expenses was properly withheld. Rather, the court stated "there were lawful reasons to withhold the security deposit." Although it did not then explicitly list those reasons, we conclude the record plainly shows the court was not relying on the $179.87 in routine clean-up expenses to justify its decision.

¶15 This conclusion follows because Cole acknowledged at trial that he "owe[d] a water bill of $883.46" when he vacated the premises.[4] That amount

---

[3] Both WIS. STAT. § 704.28(3) and WIS. ADMIN. CODE § ATCP 134.06(3)(c) (June 2018) provide that a landlord is not authorized to "withhold any amount from a security deposit for normal wear and tear, or for other damages or losses for which the tenant cannot reasonably be held responsible under applicable law."

All references to the Wisconsin Administrative Code ch. ATCP 134 are to the June 2018 version unless otherwise noted.

[4] As indicated above, Blank's initial letter to Cole regarding the security deposit stated that Cole owed a past due water bill of $635.48. At trial, however, the parties agreed that the value of the past due water bill was actually $883.46, and that figure is not disputed on appeal.

alone was only $11.54 less than Cole's $895 security deposit, and WIS. STAT. § 704.28(1) clearly authorizes a landlord to withhold unpaid utility bills from a security deposit. The circuit court then awarded Blank $1765.98 for the "costs to repair" the bathroom water damage attributable to Cole's "neglectful" conduct. That amount—which, as we explain in the following section, was properly awarded—so far exceeds the remaining security deposit balance of $11.54 that it is evident the court did not err in denying Cole's counterclaim that the $179.87 in routine clean-up charges was unlawfully withheld from his security deposit.

## II. Bathroom damage

¶16 Cole next argues that the "preponderance of the evidence" does not support the circuit court's "judgment against Cole in regard to the upstairs bathroom water damage." The court explained its award of the bathroom water damage as follows:

> I am going to enter a judgment in favor of the plaintiff and against Mr. Cole in the amount of $1,754.44. I find that the plaintiff has established that the bathroom damage was caused by the Coles during their tenancy. The damage to that floor and the water damage was extensive. It was serious. I am absolutely shocked and surprised that at no time Mr. Cole or Mrs. Cole would have notified the landlord of that issue.
>
> It seems irresponsible. It seems neglectful especially in light of, if you believe their testimony on the other issues, which I don't necessarily believe, the costs to repair are reasonable, appropriate; and so I am going to award them that amount [i.e., $1,765.98[5]]. Mr. Cole has acknowledged that he owes a water bill of $883.46. So those two

---

[5] Although the circuit court did not explicitly state the amount it was awarding for the water damage in its oral pronouncement, the written judgment states that Blank "met its burden of proof regarding its claim for damages to its property in the amount of One Thousand Seven Hundred Sixty-Five Dollars and Ninety-Eight Cents ($1,765.98)."

combined is $2,649.44. There is an agreement that the security deposit was kept of $895 so that reduces that amount down to $1,754.44. …

I also find because it was argued that there is language in the lease in Exhibit No. 1 on page 2 that indicates, No. 7, that it is—The tenant agrees to keep the premises in clean and tenable condition, in as good repair as on the first day of the lease term, normal wear and tear excepted. That bathroom was not normal wear and tear. I would not expect that it be kept in a new condition but a good condition that's consistent with normal wear and tear of a new place.

The fact that Mrs. Cole put down the Gorilla Tape and didn't make efforts to notify anybody and this problem went on for a long period of time doesn't satisfy Mr. Cole's obligation to make sure that that happens. Mr. Cole testified that he was aware of it, that he knew what Mrs. Cole was doing, and also was aware that no communication was made with the landlord.

¶17 In his brief-in-chief, Cole acknowledges that the bathroom referenced in the circuit court's decision sustained "sub-floor water damage" during his tenancy. He also acknowledges that this damage occurred because of a problem with the caulking around the bathtub. Nonetheless, he argues that the court erred in holding him liable for that damage because the "proximate cause" of the caulk-line problem was "hasty construction effort," as opposed to "Cole's two children splashing in the tub."

¶18 Cole's argument misses the mark because the circuit court's decision did not rest on a finding of who caused the caulk-line problem. Rather, the court acknowledged that there was a problem. Then, without determining who caused that problem, the court found Cole breached the lease and held Cole liable for the water damage because he and his wife were aware of the problem but failed to report the issue to Blank. Instead, as Cole acknowledged at trial, his wife attempted to fix the issue by putting Gorilla Tape over the caulk line. The court

explicitly found this conduct to be "neglectful." As Cole develops no argument that this finding is clearly erroneous or runs contrary to any legal standard, we need not consider this argument further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶19 Cole next argues that a portion of the circuit court's award for bathroom damages was attributable to an "[u]ndamaged [b]athroom [v]anity."[6] He reasons that "none of the evidence shows that the water damage to the bathroom subfloor also damaged the vanity. … [T]he photographic evidence of [Cole] does not show that the water incursion affects the vanity at all."

¶20 Cole's argument in this regard ignores our standard of review by asking us to reverse reasonable inferences drawn by the circuit court. Michael Blank testified that Cole's photograph of the vanity showed a "water stain" and that it looked like somebody "shoved a wet towel" into the back of the vanity. Similarly, Blank's property manager, Cassie Dodd, provided the following testimony in response to questioning from Cole's counsel:

> Q Let's take a look at the next photograph, the second and third to last. This is the staining on the back wall of the upstairs bathroom vanity. Do you remember this?
>
> A Yes.
>
> Q Do you recognize that as water staining?

---

[6] We note that, in his brief-in-chief, Cole initially refers to the bathroom vanity as "undamaged." He then states that a "photograph taken by Cole during his February 8, 2017 discovery inspection does not show any damage to the bathroom vanity." Two sentences later, however, he seemingly acknowledges that the vanity was, in fact, damaged when arguing that "the only discernible water damage to the vanity during the February 2017 discovery inspection was from an apparent 'behind the wall' water leak that could have been no fault of Cole or his family." Regardless of whether Cole intends to argue that the vanity was undamaged or that it was damaged for reasons not attributable to him, we reject his argument for the reasons stated.

A  Yes.

Q  Do you think it could have come from a wet towel thrown up against the back?

A  Yes.

Additionally, Cole testified that his wife would "use a towel" to wipe up excess water in the upstairs bathroom.  We agree with Blank that this testimony, taken together, provides an ample basis upon which the court could reasonably infer that Cole was responsible for damage to the bathroom vanity.  Consequently, we refuse—as we must—to reverse the court's finding.  *See Royster-Clark*, 290 Wis. 2d 264, ¶12.

**III.  Retaliatory eviction**

¶21  Cole also argues the circuit court erred "by not finding that [Blank] engaged in retaliatory conduct against Cole prohibited by WIS. STAT. § 704.45(1)(c)  and  WIS.  ADMIN.  CODE  § ATCP  134.09(5)(c)."  Section 704.45(1)(c) provides that a landlord may not "bring an action for possession of the premises, refuse to renew a lease or threaten [to do so] ... if there is a preponderance of evidence that the action ... would not occur but for the landlord's retaliation against the tenant" for asserting various legal rights.  Similarly, § ATCP 134.09(5)(c) provides that "no landlord shall terminate a tenancy … in retaliation against a tenant because the tenant has" asserted his or her legal rights.

¶22  Cole "assert[s] that the retaliatory conduct … began on December 3 & 4, 2014, when Attorney Monroe emailed her letters to [Blank] concerning Cole's tenancy issues."  Cole made this same argument in the circuit court, and, after providing a lengthy summary of the evidence introduced over the course of

the two-day trial, the court rejected his argument. The court stated, in relevant part:

> I don't think the defense has established by a preponderance of the evidence that anything changed after that letter.
>
> I am going to reference Mr. Blank's letter which he sent to Mr. Cole on December 2 at 12:00 a.m., it says; and he says in part we will be requiring the Social Security number as well as a copy of your wife's photo ID. Prior to that it says regarding the Social Security number, our policy per our attorney's written lease agreement states that Social Security numbers are required and then he gives the two reasons for it.
>
> That seems pretty clear from the top guy at the company who's consulting with his attorney that their position as of December 2 was that Mrs. Cole was going to need to provide a Social Security number and provide a photo ID. That was based upon their written policies as well as what they were signing or the written lease agreements and also after consulting with his corporate attorney.
>
> I find it real challenging to say then 24 hours later or 48 hours later when an attorney writes a letter all of a sudden they are going to enforce something that they said they are going to enforce, and they consistently were saying it for six months. Now, a lot of this is based upon how I view people and their credibility and I again will look at Mr. Blank; and when I read his letter, I look at it as this is a credible guy who has a high level of integrity, is trying to run a company, and he's getting involved with sort of a low-level deal that he has other people responsible for. And not only does he take the time to respond but he responds appropriately, mentions exactly why, and does so in a very generous, thoughtful way. And just because he happens to ask a question, May I ask you why you are reluctant to provide?, that doesn't mean that it was open for negotiation and then he explains why they haven't received the updated lease agreement.
>
> So my decision with respect to the counterclaim as it relates to retaliation is that the defense clearly has not established—it's not even close—any evidence, not even a preponderance of the evidence, but really have demonstrated no evidence that is credible to suggest that the plaintiff did anything in retaliation to Mr. Cole for any

11

of the identified reasons within Statute 704.45 including exercising Mr. Cole's right to retain counsel.

¶23 On appeal, Cole does not argue that any of the findings or credibility determinations the circuit court made in the above-quoted portion of its decision are clearly erroneous. Instead, he argues that the court erred "in failing to deliberate upon the full weight of the evidence." Specifically, he faults the court for failing to find that Blank fabricated evidence with respect to Blank having issued Cole a twenty-eight day notice on December 4, 2014. Cole reasons in his brief-in-chief:

> The error in the current judgment against Cole … is that the 28-Day notice is not identifiable, at all, prior to its 2017 delivery as a discovery item by [Blank]. It is not present anywhere in the 2015 eviction record. It is not present anywhere in Cole's appeal of his 2015 eviction. But its practical effect in terms of the existing retaliatory eviction claim is that it diffuses, completely, Cole's claim that his hiring of Attorney Monroe resulted in the issuance of the 14-Day eviction notice on December 17, 2014, where up until that time [Blank] had consistently been negotiating with him for an extension, despite the Social Security Number dispute.
>
> … [T]he absolute absence of [Blank's] 28-day Notice prior to 2017, in both the eviction record and the Appeal of that eviction, constitutes the great weight and clear preponderance of the evidence commanding a reversal under *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 249, 274 N.W.2d 647 (1979), because that absence renders that 28-Day Notice *Falsus in Uno, Falsus in Omnibus.*

¶24 It is difficult to follow Cole's logic, as he fails to explain how fabricating a document to show that an eviction notice was prepared on the same day that Cole's attorney first contacted Blank would diffuse a potential retaliatory eviction claim. Regardless, the greater problem with Cole's argument is that it again ignores our standard of review. As set forth above, the circuit court did not

12

rely on the twenty-eight day notice in any fashion when it rejected Cole's retaliatory eviction counterclaim.

¶25     Instead, the circuit court looked at the conduct of the parties well before Cole hired an attorney and found, as a matter of fact, that on December 2, 2014, Blank decided "to enforce something that they said they are going to enforce [i.e., the requirement that Cole's wife be added to the lease], and they consistently were saying it for six months."  Once again, because Cole develops no argument this was not a reasonable inference supported by the record, we affirm that finding.  *See **Royster-Clark***, 290 Wis. 2d 264, ¶12.

## IV.  Blank's motion for attorney fees and costs

¶26     Blank argues Cole's appeal is frivolous and requests an award of attorney fees and costs pursuant to WIS. STAT. RULE 809.25(3).  That rule provides that an appeal is frivolous, thus warranting an award of appellate costs and fees, when it is either "filed, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another" or a "party or the party's attorney knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law."  To award costs and attorney's fees, an appellate court must conclude that a party's entire appeal is frivolous.  ***Schapiro v. Pokos***, 2011 WI App 97, ¶20, 334 Wis. 2d 694, 802 N.W.2d 204.  Whether an appeal is frivolous is a question of law.  ***Id.***

¶27     We agree with Blank that Cole's entire appeal is frivolous.  This case involved a two-day trial, during which the circuit court heard testimony from numerous witnesses, including the parties, reviewed hundreds of exhibits, and then gave a lengthy, well-reasoned decision.  Now, on appeal, Cole markedly ignores

13

both the substance of the court's decision and our standard of review. As explained above, instead of developing a reasoned argument as to why the court's factual findings were clearly erroneous, he either: (1) attacks a decision the court never made; or (2) ignores the court's findings and points to evidence that, in his opinion, would have supported an alternative inference in his favor. It is fundamental, however, that an appellate court is not a forum in which a losing party can simply retry disputed factual issues. *See Lessor*, 221 Wis. 2d at 667-68.

¶28 Thus, we conclude that Cole knew, or should have known—especially in light of the fact that he was represented by counsel—that this appeal was without basis in law or equity and is not supported by a good faith argument for an extension, modification or reversal of existing law. We therefore grant Blank's motion for costs and reasonable attorney fees, and we remand this matter to the circuit court to determine the proper amount thereof.

*By the Court.*—Judgment affirmed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

14