COURT OF APPEALS
DECISION
DATED AND FILED

February 27, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2019AP141**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CV51

**IN COURT OF APPEALS
DISTRICT IV**

PAUSTIAN MEDICAL & SURGICAL CENTER, S.C.,

    PLAINTIFF-APPELLANT,

  V.

IMT INSURANCE COMPANY,

    DEFENDANT-RESPONDENT,

RC HEATING AND COOLING, LLC,

    DEFENDANT.

APPEAL from an order of the circuit court for Clark County: ROBERT J. SHANNON, Judge. *Affirmed*.

Before Blanchard, Kloppenburg and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. This is an insurance coverage dispute between Paustian Medical & Surgical Center, S.C., and IMT Insurance Company involving the determination of whether IMT owes a duty to defend or indemnify its insured, RC Heating & Cooling, against the claims that Paustian has brought against RC. Whether IMT owes such a duty hinges on whether RC has coverage under the IMT insurance policy for Paustian's negligence and breach of contract claims arising out of a project to design and install an HVAC system in Paustian's facility.

¶2      The circuit court granted IMT's motions for summary judgment and declaratory judgment and dismissed IMT from the action, ruling that Paustian's allegations do not establish an "occurrence" or "property damage" under the terms of the insurance policy, and that, even if an occurrence and property damage had occurred, the policy's "impaired property" exclusion applies to bar coverage.

¶3      We conclude that IMT has no duty to defend RC against the allegations in Paustian's amended complaint (referred to in this opinion as the complaint) under the IMT policy, because assuming, without deciding, that Paustian's allegations establish that an occurrence and property damage occurred, the allegations also establish that the policy's "impaired property" exclusion applies to bar coverage for Paustian's claims. We also deem Paustian to concede that no exception to the exclusion applies to restore coverage. Accordingly, we affirm the circuit court's order dismissing IMT from this action.

## BACKGROUND

¶4      The following facts are undisputed for purposes of this appeal.

¶5      In 2012, Paustian entered into a contract with RC pursuant to which RC agreed to provide the design and installation of an HVAC system for a "build out" of Paustian's existing medical clinical facility. RC then contracted with a state-registered Designer of Engineering Systems to design the HVAC system for the Paustian project, and RC installed the HVAC system as designed.

¶6      After completion of the HVAC project, Paustian sued RC and IMT for breach of contract and negligence.[1] Paustian alleges in its complaint that RC provided an inadequate design of the HVAC system, provided defective materials and services, failed to meet applicable HVAC codes, failed to provide services in a workmanlike manner, and failed to properly warrant its work. Paustian alleges that, due to RC's breach of contract and negligence, the HVAC system did not meet specifications for the facility's build out and that, as a result, (1) Paustian lost income because Paustian was unable to use the build-out areas for performing certain medical procedures, and (2) Paustian incurred "expenses associated with repairing and replacing the defective work."

¶7      During the time of its work on Paustian's medical facility build out, RC held a commercial liability insurance policy issued by IMT. The policy provides the following pertinent liability coverage, which Paustian argues applies:

> COVERAGE L – BODILY INJURY LIABILITY / PROPERTY DAMAGE LIABILITY
>
> "We" pay all sums which an "insured" becomes legally obligated to pay as "damages" due to … "property damage" to which this insurance applies. The … "property damage" must be caused by an "occurrence[.]"
>
> …

---

[1] Paustian also sued the parties that designed the HVAC system and their insurer for negligence. Those claims are not at issue in this appeal.

> COVERAGE N – PRODUCTS/COMPLETED WORK
> "We" pay all sums which an "insured" becomes legally obligated to pay as "damages" due to … "property damage" arising out of the "products/completed work hazard" to which this insurance applies. The … "property damage" must be caused by an "occurrence[.]"

The policy also provides the following regarding a duty to defend:

> "We" have the right and duty to defend a suit seeking "damages" which may be covered under the Commercial Liability Coverage.

¶8      IMT filed motions for declaratory judgment and summary judgment, seeking a determination that IMT has no duty to defend or to indemnify RC as to Paustian's claims. Specifically, IMT argued that Paustian's allegations do not establish the existence of an "occurrence" or "property damage" falling under the policy's initial grant of coverage and that, even if the policy provides initial coverage, several exclusions apply to bar coverage. After reviewing the parties' briefs and hearing oral argument, the circuit court granted IMT's motions and dismissed IMT from this action. Paustian appeals.

## DISCUSSION

¶9      As stated, this appeal concerns whether the IMT policy provides coverage for Paustian's claims against RC, such that IMT has a duty to defend and indemnify RC as to those claims. We first summarize the applicable standard of review and pertinent principles governing the interpretation of insurance policies and the process typically used by courts in duty to defend and indemnify cases. We then explain why we conclude that, assuming without deciding that the allegations in Paustian's complaint establish that the policy provides coverage for Paustian's claims against RC, the allegations also establish that the impaired property exclusion applies to bar coverage in this case. We also explain that we deem

4

Paustian to concede that the exclusion's exception does not apply to restore coverage.

## I. Standard of Review and Pertinent Principles of Law

### A. Standard of Review

¶10    "We review a grant of summary judgment de novo, using the same methodology as the circuit court. Summary judgment is proper when the record demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Blasing v. Zurich Am. Ins. Co.*, 2014 WI 73, ¶21, 356 Wis. 2d 63, 850 N.W.2d 138 (internal citations omitted).

### B. Interpretation of Insurance Policies

¶11    In this appeal, we must interpret provisions of the IMT insurance policy. Whether an insurance policy provides coverage is a question of insurance contract interpretation which we also review de novo. *1325 N. Van Buren, LLC v. T-3 Group, Ltd.*, 2006 WI 94, ¶23, 293 Wis. 2d 410, 716 N.W.2d 822. "We interpret insurance policies in the same manner as other contracts—to give effect to the intent of the contracting parties. We construe policy language as a reasonable person in the position of the insured would understand such language." *Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶14, 369 Wis. 2d 607, 881 N.W.2d 285 (internal citations omitted).

### C. Duty to Defend

¶12    Insurance policies, such as the policy that IMT issued to RC, are contracts that establish an insurer's "duty to indemnify the insured against damages

or losses, and the duty to defend against claims for damages." *Id.* (internal quotation omitted).[2]

¶13    The "duty to defend" is "the insurer's responsibility to defend the insured from all actions brought against the insured based on alleged facts or circumstances falling within the purview of coverage under the policy, regardless of the suit's validity or invalidity." *Marks v. Houston Cas. Co.*, 2016 WI 53, ¶37, 369 Wis. 2d 547, 881 N.W.2d 309 (internal quotation omitted).  We determine whether an insurer has a duty to defend its insured by comparing the four corners of the underlying complaint to the terms of the entire insurance policy.  *Water Well*, 369 Wis. 2d 607, ¶15.  We "must liberally construe the allegations contained in the underlying complaint, assume all reasonable inferences from the allegations made in the complaint, and resolve any ambiguity in the policy terms in favor of the insured." *Id.*

¶14    The three-step process in duty to defend cases is as follows:

(1)    "First, a reviewing court determines whether the policy language grants initial coverage for the allegations set forth in the complaint.  If the allegations set forth in the complaint do not fall within an initial grant of coverage, the inquiry ends."

(2)    Second, "if the allegations fall within an initial grant of coverage, the court next considers whether any coverage exclusions in the policy apply."

(3)    Third, "[i]f any exclusion applies, the court next considers whether an exception to the exclusion applies to restore coverage.  If

---

[2] Because the duty to defend is broader than the duty to indemnify, our conclusion that there is no duty to defend is dispositive and we do not address whether there is a duty to indemnify. *See Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶¶16-17, 369 Wis. 2d 607, 881 N.W. 2d 285 (explaining that the duty to defend is broader than the duty to indemnify); *League of Women Voters of Wisconsin Educ. Network, Inc. v. Walker*, 2013 WI App 77, ¶93 n.13, 348 Wis. 2d 714, 834 N.W.2d 393 ("[A]ppellate courts need not address non-dispositive issues.").

coverage is not restored by an exception to an exclusion, then there is no duty to defend." *Id.*, ¶16 (internal citations omitted).

"If the policy, considered in its entirety, provides coverage for at least one of the claims in the underlying suit, the insurer has a duty to defend its insured on all the claims alleged in the entire suit." *Id.*

## II. Analysis

¶15 The IMT policy coverages that Paustian argues apply, "Coverage L" and "Coverage N," both require that an "occurrence" result in "property damage." The policy defines an "occurrence" as "an accident and includes repeated exposure to similar conditions," and defines "property damage" as "physical injury or destruction of tangible property" or "the loss of use of tangible property whether or not it is physically damaged."

¶16 As stated, in its complaint, Paustian alleges damages in the form of lost income due to loss of use of the facility's build-out areas and in the form of "expenses associated with repairing and replacing the defective work," all resulting from "the deficiencies in the HVAC system."

¶17 We assume without deciding that Paustian's allegations establish that there was an "occurrence" resulting in "property damage" so as to trigger an initial grant of coverage under the IMT policy. However, as we now explain, we conclude that IMT has no duty to defend RC as to Paustian's claims because Paustian's allegations also establish that the "impaired property" exclusion of the policy applies and bars coverage for those claims, and we deem Paustian to concede that no exception applies to restore coverage.

## A. The Impaired Property Exclusion

¶18    The "Exclusions" subsection in the policy's "Commercial Liability Coverages" section begins with the following language:

> "We" do not pay for a loss if one or more of the following excluded events apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded event.

¶19    The Exclusions subsection continues with a subpart titled "Additional Exclusions That Apply Only to Property Damage." In this subpart, the ninth enumerated exclusion (which we refer to as the "impaired property" exclusion) reads as follows:

> "We" do not pay for "property damage" to property that has not been physically injured or destroyed, or to "impaired property", that arises out of:
>
> (a) a delay or failure to perform a contract by "you" or one acting on "your" behalf; or
>
> (b) a defect, deficiency, inadequacy, or unsafe condition in "your work" or "products".
>
> This exclusion does not apply to the loss of use of other property resulting from sudden and accidental physical injury to or destruction of "your work" or "products" after having been put to its intended use.

## B. Application of the Impaired Property Exclusion to Paustian's Claims

¶20    The impaired property exclusion has two requirements pertinent to our analysis:  (1) property damage to property that has not been physically injured or destroyed; and (2) loss of use arising out of failure to perform a contract, or a defect, deficiency, inadequacy, or unsafe condition in the work.  We address these requirements in turn.

8

¶21 *Property damage to property that has not been physically injured or destroyed.* As noted above, the policy defines "property damage" as "physical injury or destruction of tangible property" or "the loss of use of tangible property whether or not it is physically damaged." The complaint alleges that Paustian was "unable to use the build-out areas" for certain medical procedures. We assume without deciding that the loss of use that is alleged in the complaint is "property damage" as defined by the policy.

¶22 However, as pertinent to the impaired property exclusion, the complaint does not allege any physical injury or destruction of tangible property. Paustian does not allege any type of physical damage *to* the HVAC system itself, or that the HVAC system *caused* any physical damage to the facility, or that any property was physically damaged when Paustian took steps to repair and replace the HVAC system. Rather, Paustian alleges that the HVAC system lacked the attributes Paustian alleges were required, and that, because of the deficiencies in the HVAC system that RC installed, Paustian lost income from not being able to use its facility for certain medical procedures and incurred damages constituting "expenses associated with repairing and replacing the defective work." Thus, these allegations establish that the first requirement of the exclusion—"'property damage' to property that has not been physically injured or destroyed"—applies.

¶23 In its reply brief, Paustian cites as persuasive authority language in the authored but unpublished opinion, *General Cas. Co. of Wisconsin v. Rainbow Insulators, Inc.*, No. 2010AP347, unpublished slip op. ¶13 (WI App Mar. 31, 2011), which rejects an argument in favor of a duty to defend that "repair efforts in tearing out and replacing the defectively installed construction elements … do not count as physical injury to property." That case is easily distinguishable. As we noted in *General Cas. Co. of Wisconsin*, the complaint there alleged conduct that

"directly resulted in damages caused by 'the physical destruction of ceilings'" that the insured had constructed. *Id.*, ¶15. Here, in contrast, Paustian's complaint alleges replacement of equipment but fails to allege physical injury to or destruction of RC's work product or anything else. Accordingly, there are no allegations in Paustian's complaint that, if proven, would constitute "property damage" in the form of physical injury or destruction.

¶24    In its briefing, Paustian points to discovery to support its assertions of physical damage to its property, specifically relating to "the removal of drywall, ceiling, piping, lighting, and fixtures, as well as the addition of protective lining to the floors and walls," and the addition of "required components such as doors, air handling units, and walls in new locations." This argument fails because the asserted physical damage was not alleged in the complaint, and under the controlling law cited above, our analysis must be limited to the four corners of the complaint. *See Water Well*, 369 Wis. 2d 607, ¶15. There was no amendment to the complaint making these allegations.

¶25    *Loss of use arising out of failure to perform a contract, or a defect, deficiency, inadequacy, or unsafe condition in the work.* Paustian explicitly alleges that its damages arise out of RC's breach of the contract terms and out of the defective and inadequate system that RC installed. Thus, Paustian's allegations establish that the next requirement of the exclusion applies:  that the property damage alleged in the complaint arises out of RC's "failure to perform [the] contract" or "a defect, deficiency, inadequacy, or unsafe condition in" RC's work.

¶26    In sum, we conclude that Paustian's allegations establish that the impaired property exclusion applies to bar coverage for Paustian's claims. We now explain why Paustian's arguments to the contrary are unavailing.

¶27 *Coverage N does not have "property damage" in its title.* Paustian argues that the impaired property exclusion is not clearly and unambiguously incorporated into the policy's Products/Completed Work coverage (Coverage N). Paustian reasons that the subpart of the policy in which the exclusion is located is titled "Additional Exclusions That Apply Only to Property Damage," and, consequently, the exclusions in that section are intended only to apply to Coverage L, entitled "Property Damage Liability," but not to Coverage N, which does not have "property damage" in its title. This is an unreasonable interpretation of the insurance policy, as a whole, for at least the following reasons.

¶28 First, regardless of its title, Coverage N, the Products/Completed Work coverage, expressly provides that IMT will pay damages due to "property damage" arising out of the policy's "products/completed work hazard." This coverage is plainly and unambiguously modified by the impaired property exclusion located in the "Additional Exclusions That Apply Only to Property Damage." The impaired property exclusion expressly modifies any coverage purporting to insure against property damage by noting that IMT will not pay for "property damage" if the conditions of the exclusion are met. As modified, coverage for "property damage" may be excluded where the cause of the property damage involves the insured's failure to perform contractually, or where the insured's work is defective, inadequate, or unsafe.

¶29 Second, the sole issue on appeal involves the "Commercial Liability Coverage" section of the policy RC held with IMT. Within that section are subsections including "Definitions," "Principal Coverages" (including Coverage L and Coverage N), and "Exclusions." Just as it is plain that the definitions in the "Definitions" subsection apply to all Principal Coverages in this section of the policy unless otherwise noted, so too is it plain that the exclusions in the

11

"Exclusions" subsection apply to all Principal Coverages in this section of the policy unless otherwise noted. For example, the exclusion which the parties refer to as the "professional services exclusion" provides the terms of the exclusion, and then ends with an exception: "except as covered under the Incidental Medical Malpractice Injury Coverage." Similarly, the impaired property exclusion itself ends with an exception describing when the exclusion does not apply. Such "exceptions" in some exclusions clearly indicate that RC agreed to be insured by a policy in which exclusions apply, unless otherwise noted.

¶30 *No allegations of diminished value.* Paustian argues that the impaired property exclusion does not apply because the complaint does not allege damage to "impaired property," which is defined in the policy as property "whose value has been decreased," inasmuch as the complaint does not "involve claims for diminished value." However, as stated above, the exclusion applies to property damage either "to property that has not been physically injured or destroyed" *or* "to impaired property." We do not reach Paustian's argument as to whether the "impaired property" alternative requirement of the exclusion applies because our conclusion that Paustian's alleged property damage is to "property that has not been physically injured or destroyed" is dispositive. *See **League of Women Voters of Wisconsin Educ. Network, Inc. v. Walker***, 2013 WI App 77, ¶93 n.13, 348 Wis. 2d 714, 834 N.W.2d 393 ("[A]ppellate courts need not address non-dispositive issues.").

¶31 *Precedent from other jurisdictions.* Finally, Paustian argues that cases from federal district courts and a Tennessee state court establish that the circuit court's application of the impaired property exclusion "was too broadly-applied." However we are not bound by precedent from these other jurisdictions, *see **State v.**

12

*Muckerheide*, 2007 WI 5, ¶7, 298 Wis. 2d 553, 725 N.W.2d 930, and we decline to consider Paustian's argument based on cases from other jurisdictions.

¶32    In sum, we conclude that the property damage that we assume, without deciding, to be alleged in Paustian's complaint, is, based on those allegations, "property that has not been physically injured or destroyed," arising out of RC's "failure to perform a contract" when RC installed an HVAC system that was "defect[ive], deficien[t], inadequa[te], or unsafe" for use in Paustian's facility. Consequently, Paustian's allegations establish that the impaired property exclusion applies to bar coverage for Paustian's claims under the IMT policy.

*C. The Exception to the Impaired Property Exclusion*

¶33    Finally, we need not address whether an exception to the impaired property exclusion applies to restore coverage for Paustian's claims.

¶34    The exception states:

> [t]his [impaired property] exclusion does not apply to the
> loss of use of other property resulting from sudden and
> accidental physical injury to or destruction of "your work"
> or "products" after having been put to its intended use.

¶35    Paustian neither argues that this exception applies nor replies to IMT's argument that the exception does not apply. Accordingly, we deem Paustian to concede that IMT's arguments on this point are correct. *See United Co-op. v. Frontier FS Co-op.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (lack of response may be taken as a concession).

**CONCLUSION**

¶36 For the forgoing reasons, we affirm the circuit court's order dismissing IMT from this action.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).