# COURT OF APPEALS
# DECISION
# DATED AND FILED

## May 11, 2021

**Sheila T. Reiff**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.   **2020AP1638**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2017JV388**

**IN COURT OF APPEALS**
**DISTRICT I**

IN THE INTEREST OF G.R.H., A PERSON UNDER THE AGE OF 17:

STATE OF WISCONSIN,

     PETITIONER-RESPONDENT

   V.

G.R.H.,

     RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Milwaukee County: LINDSEY CANONIE GRADY and PAUL C. DEDINSKY, Judges. *Affirmed*.

¶1     WHITE, J.[1]   G.R.H. appeals the order requiring him to comply with the sex offender registration requirement for fifteen years, as well as the order

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

adjudicating him delinquent. He argues that the circuit court failed to use a rational process to reach its conclusion with regard to the probability that G.R.H. would commit future violations, and therefore, its order on registration was an erroneous exercise of discretion. Because the record supports the circuit court's exercise of discretion to deny a permanent stay from registration, we affirm the order requiring sex offender registration. Further, we affirm the delinquency adjudication order.

## BACKGROUND

¶2 In May 2017, the State filed a delinquency petition against G.R.H., then sixteen-years-old, charging him with one count of third-degree sexual assault, contrary to WIS. STAT. § 940.225(3), and one count of fourth-degree sexual assault, contrary to §940.225(3m). The petition was based on two incidents in October 2016. The petition alleged that G.R.H. committed fourth-degree sexual assault when, within his high school building, he told a female classmate to "stand up, [he] moved close to her, and began touching her buttocks and legs over her pants." He continued making sexual contact even though she "kept pushing [G.R.H.'s] hands off of her and tried pulling away from him. The petition alleged that G.R.H. committed third-degree sexual assault when G.R.H. took a walk with the same classmate into a nearby field and wooded area, and G.R.H. "managed to pull down her pants and move her so that she was bent over leaning on the downed tree" in the wooded area, and then he "inserted his erect penis into her vagina" one time and then removed it. The classmate said "ouch" because "it hurt really badly" and when she checked herself, she "noticed that she was bleeding from her vagina."

¶3 The trial court[2] conducted a trial on the State's petition over five days: August 29, 2017, September 8, 2017, September 15, 2017, November 10, 2017, and December 21, 2017. On December 21, 2017, The trial court adjudicated G.R.H. delinquent of count one, "third degree sexual assault as a felony, and [c]ount [two], fourth degree sexual assault as a misdemeanor, in the manner and form as they are charged in the respective petition[.]" The trial court "defer[red] sex offender registry to a later date to determine whether or not the individual is required to register." On January 28, 2018, the trial court entered the conditions of G.R.H.'s dispositional order, which included requirements that he "[c]ommit no new law violations rising to a judicial probable cause determination[,]" obey school and programming rules, attend school "every day, every class[,]" no alcohol, drugs, or weapons, "[n]o contact with the victim[,]" cooperate with the terms of probation, successfully complete the individual therapy program at A.S.A.P. which is the sex offender specific treatment program," and put prohibitions on pornography or sexually explicit materials. Further, G.R.H. was required to write a letter of apology to the victim and write a one-page essay on his future to the court. G.R.H.'s dispositional order was set to expire a day prior to his eighteenth birthday in July 2018.

¶4 In June 2018, the trial court held two hearings on G.R.H.'s progress. At the first hearing, the social worker informed the court that GHR had been discharged twice from court-ordered therapy programming because of his lack of attendance. G.R.H.'s counsel argued that the court should take into account that

---

[2] The Honorable Lindsey Canonie Grady presided over G.R.H.'s trial; we refer to her as the trial court. The Honorable Paul C. Dedinsky presided over the decision on G.R.H.'s sex offender registration requirement; we refer to him as the circuit court.

G.R.H. had to take two buses with an hour and forty-five minutes transit time to reach his sessions. During the first seven weeks G.R.H. was enrolled, he attended three sessions, he was twenty minutes late to two sessions due to the bus, which resulted in the therapist cancelling his session, and the therapist cancelled two sessions.

¶5 During the second hearing in June 2018, the trial court again deferred the question of his sex offender registration requirement, stating that extending the dispositional order until the day before his nineteenth birthday would provide additional time to "appropriately get this juvenile ready to be in a position where he's not put on the sex offender registry for life[.]" At additional hearings in 2018 and early 2019, the trial court was informed that G.R.H. continued to have attendance and transportation issues for therapy; the social worker complained that G.R.H. was not taking more responsibility to manage his transportation to therapy; and the trial court ordered a sex offender risk assessment from A.S.A.P. The trial court reminded all parties and attorneys that the extended probation was designed for G.R.H. to engage in treatment to reduce his risk level for reoffending and avoid the sex offender registry.

¶6 After the court calendar rotated from Judge Grady to Judge Dedinsky, the circuit court conducted the hearing to determine G.R.H.'s sex offender registration requirement over two days on July 11 and 12, 2019. G.R.H. called an expert witness psychologist who testified about the lack of research that makes clear the risk of reoffending for juvenile sex crimes. The defense expert testified about evaluating G.R.H., not identifying G.R.H. as having any sexual deviance issues, and finding him to have a low risk of reoffending.

¶7     The State called an expert witness psychologist at the clinic that G.R.H. was originally ordered to attend for group programming and that provided A.S.A.P., a juvenile sex offender treatment program. The State's expert testified that G.R.H. interfaced with two individual therapists and two therapists in group therapy. The State's expert's last risk assessment of G.R.H. had been completed eight months before the hearing, in November 2018; in the assessment, G.R.H. was found to be of moderate risk of reoffending. The expert concluded the risk assessment was still accurate because of everything the expert knew about G.R.H., the work he did in A.S.A.P. the previous year, and sessions he completed with the State's expert in summer 2019.

¶8     The social worker then informed the court that G.R.H. had worked with multiple treatment providers but had not successfully completed a sex offender treatment program, G.R.H. had not completed a letter of apology, and G.R.H. had not completed the court-ordered essay. The social worker stated that G.R.H. had "never taken accountability" throughout his probation.

¶9     Before issuing its decision on G.R.H.'s sex offender registration requirement, the circuit court reviewed the defense's burden to prove by clear and convincing evidence that G.R.H. satisfied the criterion to be granted a stay from sex offender registration requirements, under the factors enumerated in WIS. STAT. § 301.45(1m)(e). For the first factor, the circuit court considered that G.R.H. was sixteen years of age at the time of offense and the victim was a few months older than G.R.H. Second, the court noted that G.R.H.'s relationship with the victim was "at least acquaintances [and] maybe friends[.]" Third, the court stated that force was not an element to the crime for which he was convicted, only lack of consent; however, the victim testified that she was injured. The fourth factor was

whether the victim suffered from mental illness or mental deficiency, which the court determined was not relevant.

¶10 The court's review of the fifth factor—the probability of whether G.R.H. would commit another violation in the future—was thorough. The circuit court stated that it had heard from "both of the clinical psychologists who testified, talked about the different risk factors. They talked about the risk tools." The court acknowledged that the State's expert concluded G.R.H. was at a moderate risk level and the defense expert concluded that G.R.H. was below that risk level. The court stated that "[w]hat this gets down to is an abysmal failure on your part to cooperate with the [c]ourt's order." The court noted that G.R.H. had not complied, but he had also not reoffended. Considering the probability of future violations, the court stated:

> And so when I look at this, I say, am I convinced that this young man is not going to reoffend? I'm not. Is it clear to me that he's going to not reoffend in the future? I'm not. Has he taken steps to make that more clear to me and convince me one way or the other? No, I'm not.

¶11 The circuit court reviewed the legal standard for this decision, considering the statutory factors and the holdings of *State v. Cesar G.*, 2004 WI 61, 272 Wis. 2d 22, 682 N.W.2d 1. It "listened to the evidence, the case materials, the transcripts related to the incident in this case, the reports and the judgment roll." The circuit court found that G.R.H. had not satisfied the burden of proof based on all of the criterion in WIS. STAT. § 301.45(1m). The circuit court ordered him to comply with the sex offender registration requirement for fifteen years from the date of the trial disposition, December 21, 2017.

¶12    G.R.H. appeals both the order requiring sex offender registration and the order adjudicating him delinquent. Additional facts are included in the discussion.

## DISCUSSION

¶13    G.R.H. argues that the circuit court erred when it required him to comply with the sex offender registration requirement for fifteen years. G.R.H. contends that the circuit court failed to demonstrate a rational process to reach its conclusion about the fifth *Cesar G* factor: the probability that the juvenile will commit other violations in the future. The State argues that G.R.H. failed to prove by clear and convincing evidence that the court should permanently stay G.R.H. from the sex offender registration requirement. We conclude that the record supports the circuit court's exercise of discretion.

¶14    A juvenile adjudicated delinquent on the basis of specific sexual assault charges, as enumerated by statute, is required to comply with the sex offender reporting requirements under WIS. STAT. § 301.45 unless the court determines that the juvenile is not required to comply under the statutory exceptions for underage sexual activity. WIS. STAT. § 938.34(15m); *see* § 301.45(1m). A statutory exception is available when all of the following apply: (1) the juvenile was adjudicated after 1993; (2) the juvenile committed a violation, of WIS. STAT. § 940.225(3)(a); (3) at the time of the violation, the juvenile had not attained the age of nineteen years and the victim had attained the age of fifteen years; and (4) the court determines it is not necessary, in the interest of public protection, to require the person to comply with the sex offender registration requirements. § 301.45(1m)(a)2m. To prove that registration is not necessary in

public protection, the court may consider the factors commonly known as the *Cesar G.* factors, and include the following:

> 1. The ages, at the time of the violation, of the juvenile and the victim of the violation;
>
> 2. The relationship between the juvenile and the victim of the violation;
>
> 3. Whether the violation resulted in bodily harm, as defined in [WIS. STAT. §] 939.22(4), to the victim;
>
> 4. Whether the victim suffered from a mental illness or mental deficiency that rendered him or her temporarily or permanently incapable of understanding or evaluating the consequences of his or her actions;
>
> 5. The probability that the juvenile will commit other violations in the future; and
>
> 6. Any other factor that the court determines may be relevant to the particular case.

*Cesar G.*, 272 Wis. 2d 22, ¶50; *see* §§ 301.45(1m)(e), 938.34(15m)(c). The juvenile "has the burden of proving by clear and convincing evidence" that the criteria are satisfied. §301.45(1m)(e). The court may then require lifetime registration, a fifteen year term of registration, or permanently stay registration. *See* § 301.45(5). Additionally, a juvenile required to register may move the court to issue a stay. *Cesar G.*, 272 Wis. 2d 22, ¶51.

¶15 The circuit court's ruling on a stay of the sex offender registration requirement is an exercise of discretion. *See* **State v. Jeremy P.**, 2005 WI App 13, ¶30, 278 Wis. 2d 366, 692 N.W.2d 311. We review the circuit court's decision to deny a stay for an erroneous exercise of discretion. *Cesar G.*, 272 Wis. 2d 22, ¶42. We will "affirm a circuit court's discretionary decision as long as the circuit court 'examined the relevant facts, applied a proper standard of law, and, using a

demonstrated rational process, reached a conclusion that a reasonable judge could reach.'" *Id.* (citation omitted).

¶16    G.R.H. argues that the circuit court erroneously exercised its discretion when it denied him a stay from reporting requirements.  First, he contends that the circuit court failed to engage in a rational decision making when reaching its conclusions on the fifth *Cesar G.* factor:  the probability that the juvenile will commit future violations.  Second, G.R.H. argues that he met his burden to prove by clear and convincing evidence that a stay of reporting requirements should be granted.

I.    *The fifth* ***Cesar G*** *factor:  the probability that the juvenile will commit other violations in the future*

¶17    G.R.H. argues that the circuit court failed to demonstrate a rational process when it reached its conclusions on the fifth ***Cesar G*** factor and denied a permanent stay of the sex offender registration requirement.  G.R.H. argues that even though most of the hearing testimony focused on the fifth factor, the circuit court based its decision on G.R.H.'s "impulsivity and his failure to comply with the conditions of supervision."  G.R.H. argues this did not demonstrate a rational process because (1) it focused on G.R.H.'s perceived impulsivity and behavior in court; (2) it ignored expert testimony; and (3) it placed an undue burden on G.R.H.

¶18    First, G.R.H. objects that the circuit court's perceptions of G.R.H.'s impulsivity relied on the commentary of the social worker, including the fact that he did not write the letter of apology to the victim or the court-ordered essay. G.R.H. complains that by deferring these superficial second-hand impressions of G.R.H.'s performance on supervision, the court was not actually examining the

9

probability he would reoffend. Instead, G.R.H. contends that the circuit court relied on factors that have no demonstrated connection to recidivism.

¶19 The record reflects that the circuit court clearly struggled with the probability of G.R.H. committing future violations. It appears that when faced with many unknowns and expert testimony that the risk was difficult to quantify, the circuit court considered what information it did have about G.R.H.'s conduct and his willingness to change it. The circuit court expressed frustration that G.R.H., over eighteen months, had not satisfied the stated expectations to complete sex offender treatment and to cooperate with court orders. It had evidence of his temperament in court and from the social worker's updates on his lack of compliance and accountability. Under *Cesar G.*, the circuit court has discretion to consider "[a]ny other factor that the court determines may be relevant to the particular case." *Id.*, ¶50. Here, the circuit court considered what it found most relevant to deciding whether G.R.H. should be required to report to the sex offender registry. G.R.H.'s assertion that he may outgrow his impulsivity and that the social worker's perceptions were not factors does not undermine that the circuit court engaged in a rational decision making process.

¶20 Second, G.R.H. argues that the circuit court demonstrated its failure to consider the great weight of expert evidence because both experts testified about the static and dynamic risk factors that can be affected or addressed through treatment and, in some cases, simply through aging. G.R.H. contends that the expert testimony showed that ninety-seven to ninety-eight percent of juvenile offenders do not offend again. G.R.H. argues that the circuit court considered its perception of G.R.H.'s impulsivity without considering whether that factor is likely to change with age.

¶21 The State argues that the record shows it made sense that the circuit court would not weigh the expert testimony more heavily: it "was the testimony by both experts, that historically, the tools used to determine risk in juvenile sex offenders have been minimally successful at best, and no better than a guess at worst. Furthermore, both experts testified that determining future risk of offending in juvenile sex offenders was extremely difficult." Although impulsivity may decrease with age, ultimately, G.R.H.'s reliance on expert testimony is based on generalized low risk of future offenses by juvenile sex offenders, not on any specific testimony about G.R.H.'s risk. Our review of the record reflects that the circuit court considered and weighed the expert testimony in its decision making process. On one hand, it did not rest on the State's expert calling G.R.H. a moderate risk and G.R.H.'s expert calling him a lower than moderate risk. On the other hand, it did not cede decision making to a statistical low risk of recidivism. Both are conclusions a reasonable court could make.

¶22 Third, G.R.H. contends that the circuit court placed an undue burden on him by asking him to convince the court that he would never commit another sexual violation in the future, rather than applying the probability framework of *Cesar G*. *See id.*, ¶51. G.R.H. argues that proving he will never reoffend is an impossible task. The record does not support that the circuit court held G.R.H. to an impossible standard. Instead, it is clear that the circuit court struggled with G.R.H.'s lack of progress or cooperation during his eighteen months under the dispositional order. His opportunity to be granted the stay was predicated on satisfying the order's conditions. Therefore, we conclude that the legal standard was not a burden to prove that G.R.H. would never reoffend, but to prove that he engaged in the court-ordered process to lower his risk to reoffend.

11

¶23    We conclude that the circuit court's analysis of the fifth *Cesar G* factor considered the relevant facts, applied the proper legal standard, and used a rational process to reach a reasonable conclusion. *See id.*, ¶42. We conclude there is no basis to disturb the circuit court's decision.

## II.    *G.R.H.'s clear and convincing evidence*

¶24    G.R.H. asserts that he satisfied his burden to prove by clear and convincing evidence that the sex offender registration requirement should be stayed. G.R.H. argues that more factors weigh toward the stay than the circuit court concluded. We note this court offers no opinion on the weight of the evidence; instead our function is to review the circuit court's exercise of discretion when it considered the appropriate weight for the evidence and each factor. *See id.*

¶25    G.R.H.'s arguments that the factors and the seriousness of the offense weigh in favor of staying registration rely on an absence of worse behavior. G.R.H. argues that the considerations of the factors should take into account that he didn't abuse someone more vulnerable than he was by age, position, or mental condition, and that he did not employ more violence or cause more injury to the victim than he could have. The State argues that the circuit court reviewed each *Cesar G.* factor, the statutory language makes no comment about the weight given to each factor, and it is at the court's discretion to weigh the factors. The record reflects that the circuit court considered each factor and the seriousness of the offense. G.R.H. does not refute the State's argument; therefore, we deem it conceded. *See United Co-op. v. Frontier FS Co-op.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (noting that appellant's failure to respond in reply brief to an argument made in respondent's brief may be

taken as a concession). Furthermore, even if we were to address the individual factors, G.R.H.'s arguments are supported only by general statements and not developed with adequate legal authority or reasoning. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (observing that we may decline to review issues that are undeveloped or inadequately briefed).

## CONCLUSION

¶26 Our review of the record supports that the circuit court considered all relevant facts when it reviewed all materials including available transcripts, conducted a two day hearing with two expert witnesses testifying, and considered the evidence. Then the circuit court reviewed the *Cesar G.* factors, and, on the record, applied the relevant facts to the factors. Therefore, the record reflects that the circuit court's decision to require registration was the result of a rational process. Accordingly, we conclude that the circuit court did not erroneously exercise its discretion when it decided against a permanent stay of the sex offender registration requirement and required him to register as a sex offender for fifteen years. We affirm the order requiring sex offender registration and the order adjudicating G.R.H. delinquent.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.