**COURT OF APPEALS
DECISION
DATED AND FILED**

**October 26, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP398**

Cir. Ct. No. **2021TR6926R**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**

---

IN THE MATTER OF THE REFUSAL OF JASON WILLIAM CASTILLO:

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JASON WILLIAM CASTILLO,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Columbia County: TROY D. CROSS, Judge. *Affirmed*.

¶1 BLANCHARD, J.[1] The circuit court applied pertinent provisions of WIS. STAT. § 343.305, including § 343.305(9)(a), to determine that Jason Castillo improperly refused to submit to a chemical test following his arrest by a Columbia County sheriff's deputy on charges that included operating with a restricted controlled substance. Castillo challenges the refusal on the ground that the evidence should be excluded because he was unlawfully seized by the deputy whose emergency lights caused him to pull over to the side of a two-lane highway.

¶2 On appeal, the State does not dispute that Castillo was unlawfully seized in the course of the deputy's attempt to stop a different vehicle, which was driving directly in front of Castillo's vehicle. The State's only arguments are that the exclusionary rule does not apply because the seizure did not involve any form of misconduct by the deputy and that exclusion of the evidence would not serve the purpose of deterring future Fourth Amendment violations.

¶3 I agree with the State that exclusion is not warranted because there was no form of misconduct by the deputy and exclusion would not "appreciably deter" any form of police misconduct. *See State v. Burch*, 2021 WI 68, ¶17, 398 Wis. 2d 1, 961 N.W.2d 314 ("[E]xclusion is warranted only where there is some present police misconduct, and where suppression will appreciably deter that type of misconduct in the future." (citing *Davis v. United States*, 564 U.S. 229, 237 (2011))), *cert. denied*, 142 S. Ct. 811 (2022) (mem.). I affirm for these reasons, and also because Castillo concedes these points by failing to dispute them on appeal. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to argument made in response brief may be taken as concession).

*Background*

¶4      The parties do not dispute the following facts, all of which the deputy testified to in the circuit court.[2]  As an experienced patrol deputy, he had conducted so many traffic stops and field sobriety tests that they were "[t]oo many to count."

¶5      At 10:45 one night, the deputy was on patrol and travelling westbound on Wisconsin Highway 16—where there is one lane of traffic in each direction—when he observed an eastbound vehicle with its high beam lights on, in violation of the rules of the road.  I will refer to this as the "target vehicle."  The deputy made a U-turn, with the goal of pulling over the target vehicle.  Before the deputy completed the turn, however, a different eastbound vehicle got between the deputy's car and the target vehicle.  Castillo operated the vehicle that came between the target vehicle and the deputy's squad car.

¶6      The deputy followed the two vehicles for about one mile or less, at which point he activated the emergency lights on his squad car while travelling directly behind Castillo's vehicle.[3]  Before that, the deputy lacked "an opportune moment to pass [Castillo's vehicle] safely."  Both the target vehicle and Castillo's

---

[2]  The witness was employed as a deputy at the time of the incident, but had a new job by the time of the suppression hearing.  For ease of reference, I do not repeatedly refer to him as a former deputy.

[3]  There was no reference in the testimony to use of a siren or horn.  The implication from the testimony is that the deputy used only his emergency lights, although it would not matter either way to the dispositive issues on appeal.

vehicle pulled to the side of the highway. The deputy lacked any justification for stopping Castillo's vehicle and did not intend to stop it; he was trying to stop only the target vehicle.

¶7    Because Castillo, in pulling to the side of the highway behind the target vehicle, did not leave enough room for the deputy to pull his squad car behind the target vehicle, the deputy pulled up behind Castillo's vehicle. Thus, stopped along the eastbound side of the highway, in order from east to west, were the target vehicle, then Castillo's vehicle, then the squad car.

¶8    The deputy got out of his squad car to make contact with operators of both vehicles, starting with Castillo's vehicle. The deputy observed a window being lowered in Castillo's vehicle and, well before he reached Castillo's vehicle on foot, the deputy could smell a "strong odor" of burnt marijuana coming from the direction of Castillo's vehicle. The deputy made contact with Castillo, who had red, bloodshot eyes and what appeared to be "marijuana flakes on his person."

¶9    Then came a series of events involving observations of the deputy and his interactions with Castillo—the details of which are not pertinent to the dispositive issues on appeal—that resulted in the deputy placing Castillo under arrest for operating with a restricted controlled substance and possession of drug paraphernalia. The deputy read to Castillo verbatim from the Informing the Accused form and Castillo gave a "flat no" to the deputy's request for his consent for a chemical test of his blood. Again, details surrounding the refusal are not pertinent to any issue raised on appeal, because Castillo's Fourth Amendment challenge is based on events that occurred before the deputy smelled the marijuana.

¶10     The circuit court denied Castillo's motion to suppress all of the evidence the deputy obtained during the incident because there was not reasonable suspicion to stop Castillo's vehicle.  The circuit court based its denial of the suppression motion on the determination that Castillo "was not stopped" by the deputy, and instead the encounter between the deputy and Castillo was "consensual."  Castillo appeals.

*Discussion*

¶11     In reviewing a circuit court's determinations pertaining to a search or seizure, we uphold the court's findings of historical fact unless they are clearly erroneous, but we review independently whether the circumstances of a search or seizure meet constitutional standards.  *State v. Williams*, 2002 WI 94, ¶17, 255 Wis. 2d 1, 646 N.W.2d 834.  As noted, here there are no disputed historical facts.

¶12     Police detention of an individual during a vehicle stop, "'even if the stop is brief and for a limited purpose, constitutes a seizure within the meaning of the Fourth Amendment.'"  *State v. Malone*, 2004 WI 108, ¶24, 274 Wis. 2d 540, 683 N.W.2d 1 (quoting Wisconsin precedent that quotes *Whren v. United States*, 517 U.S. 806, 813 (1996)).  I now briefly explain why I agree with Castillo that the circuit court erred in concluding, based on the undisputed facts, that the deputy did not stop Castillo and that the deputy-Castillo interactions were consensual, even though the State does not argue to the contrary on appeal.  The following discussion is consistent with the only arguments that Castillo makes on appeal in the only brief he has filed.

¶13     In order for a seizure to occur, an "'officer, by means of physical force or show of authority,'" must "'in some way restrain[] the liberty of a citizen.'"  *County of Grant v. Vogt*, 2014 WI 76, ¶20, 356 Wis. 2d 343, 850

5

N.W.2d 253 (quoting *United States v. Mendenhall*, 446 U.S. 544, 552 (1980)). "'[A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave,'" *Vogt*, 356 Wis. 2d 343, ¶20 (quoting *Mendenhall*, 446 U.S. at 554), provided that the person actually yields to the show of authority. *See State v. Kelsey C.R.*, 2001 WI 54, ¶¶30-33, 243 Wis. 2d 422, 626 N.W.2d 777 (discussing *California v. Hodari D.*, 499 U.S. 621, 622-23, 635-26, 629 (1991)).

¶14 Notably for the scenario here, the *Mendenhall* test "is an objective one" that turns entirely on "whether a reasonable person [in the position of the defendant], under all the circumstances, would have felt free to leave." *Williams*, 255 Wis. 2d 1, ¶23. Completely irrelevant are the subjective views of the defendant him or herself and usually irrelevant are the subjective views of any officers. *See id.*; *Brendlin v. California*, 551 U.S. 249, 260 (2007) (collecting cases showing that the U.S. Supreme Court has "repeatedly rejected attempts to introduce" an element of subjectivity into the *Mendenhall* test). The intentions of any officer could be relevant only to the extent that those intentions were objectively conveyed to the person. *See Brendlin*, 551 U.S. at 260-61.

¶15 Here, under the totality of the circumstances, the only objective signals to Castillo were that the deputy who had been trailing his vehicle for something under one mile was now directing him to pull over. Further, the deputy appeared to confirm that direction by pulling in right behind him. Castillo yielded to that show of authority, as a reasonable person in his position would have believed he was required to do. *See* WIS. STAT. § 346.04(2t) ("No operator of a vehicle, after having received a visible or audible signal to stop his or her vehicle from a traffic officer, … or marked or unmarked police vehicle that the operator

knows or reasonably should know is being operated by a law enforcement officer, shall knowingly resist the officer by failing to stop his or her vehicle as promptly as safety reasonably permits.").[4]  There was no testimony that the deputy used any form of communication at any time to indicate to Castillo that he was free either to (1) not stop in the first place or (2) drive on after initially stopping or beginning a stop.  For these reasons, the deputy's investigation, triggered by the marijuana smell, occurred immediately after the deputy had, by all objective appearances, stopped Castillo's vehicle.[5]

---

[4] Separately, even if for some reason Castillo had perceived that the deputy's goal was not to stop his vehicle (although no reason for thinking that is evident from the record), Castillo still would have been obligated to pull over to the right side of the two-lane highway, and the deputy would still have pulled in behind him.  *See* WIS. STAT. § 346.19(1) ("Upon the approach of any authorized emergency vehicle giving audible signal by siren the operator of a vehicle shall yield the right-of-way and shall immediately drive such vehicle to a position as near as possible and parallel to the right curb or the right-hand edge of the shoulder of the roadway, clear of any intersection and, unless otherwise directed by a traffic officer, shall stop and remain standing in such position until the authorized emergency vehicle has passed.").

[5] Some precedent has discussed the actual or hypothetical situation in which a purported seizure occurs based on police conduct that is itself accidental, not intentional, and the circuit court here might have deemed this to be an accident scenario.  For example, in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), an officer accidentally ran over a passenger who fell off a motorcycle following a high-speed chase, but this was not a seizure because it was not done "'through means intentionally applied.'"  *See id.* at 844 (quoting *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (a person is seized under the Fourth Amendment "when there is a governmental termination of freedom of movement through means intentionally applied." (emphasis omitted))).  But here, the deputy intentionally activated his emergency lights under circumstances in which a reasonable person in Castillo's position would have believed that this show of authority was directed at him.

*Brower* helps illustrate the difference between a case involving intentional police conduct like this one and an accident scenario such as was presented in *Lewis*.  In *Brower*, the Court concluded that police seized a driver when police set up a roadblock that the driver later collided with, because roadblocks are "designed to produce a stop by physical impact if voluntary compliance does not occur."  *Brower*, 489 U.S. at 598.  This was accidental in the sense that police very likely preferred that the driver would not run into the roadblock, but the Court explained that for Fourth Amendment purposes it was not "practicable to conduct such an inquiry into subjective intent."  *Id.*  As the Court later explained in *Brendlin v. California*, 551 U.S. 249, 260-61 (2007), police "seized" the driver in *Brower* "'through means intentionally applied.'" (Quoting *Lewis*, 523 U.S. at 844.)

¶16    In his opening brief, Castillo does not address the topic of whether the deputy here engaged in any form of police misconduct and whether suppression could "appreciably deter" any form of police misconduct. *See Burch*, 398 Wis. 2d 1, ¶17. Those are the only topics that the State addresses in its brief. Castillo has not filed a reply brief. I affirm on that ground. *See United Coop.*, 304 Wis. 2d 750, ¶39.

¶17    Further, I now briefly explain why it appears that the State is correct on these points, even if Castillo had not conceded the point through silence.

¶18    Following precedent that includes the U.S. Supreme Court's *Davis* opinion, our supreme court has explained that "'when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way.'" *Burch*, 398 Wis. 2d 1, ¶17 (quoting *Davis*, 564 U.S. at 238) (cleaned up in *Burch*); *see also id.*, ¶79 (Dallet, J., concurring in part, dissenting in part) (noting the "critical function" of the exclusionary rule, but also acknowledging precedent that it should not be applied when "the deterrent value … is 'marginal' or 'nonexistent' and outweighed by the social cost of doing so" (quoting *United States v. Leon*, 468 U.S. 897, 913-17, 922 (1984))).

¶19    Castillo has at no point disputed the deputy's version of events, which I now summarize again, this time explaining how they show that exclusion would not be appropriate.

¶20    The deputy was attempting to make a valid traffic stop of the target vehicle. There is no suggestion that his decision to stop the target vehicle was improper.

¶21    The experienced deputy, having made many stops in the past, decided that he could not safely pass Castillo's car to reach a position directly behind the target vehicle. This presented the deputy with a range of reasonable options, one of which he followed.

¶22    There is certainly no social benefit in providing incentives for police to execute *unsafe* traffic stops. For example, in executing the U-turn, the deputy certainly should have (and presumably did) take into account the safety of all vehicles travelling in both directions, which might have caused Castillo's vehicle to slip into the lane in front of him. Further, it is routine and necessary for police and other first responders to cause temporary inconvenience for blameless motorists in order to perform law enforcement or emergency duties. *See* WIS. STAT. § 346.19(1). This case appears to illustrate the common sense point that, all other things being equal, a traffic stop is best executed when the officer's vehicle is directly behind the target vehicle. But the deputy here had to deal with a fluid situation as events occurred. For these reasons, it was not unreasonable for the deputy, in attempting to execute a valid stop on the target vehicle, to cause Castillo's vehicle to pull over, at least briefly.

¶23    As for the relative positions of the three vehicles when they were pulled over on the side of the road, the deputy apparently had no reason to think that Castillo would pull up so closely to the target vehicle that the deputy could not safely pull in behind the target vehicle—or, for that matter, no reason to think that, if Castillo did happen to pull in right behind the target vehicle, that would create a problem for anyone, beyond mere inconvenience for those in Castillo's vehicle.

9

¶24     If the deputy had not encountered the strong smell of burnt marijuana as he walked toward Castillo's vehicle, then presumably the deputy would have sent Castillo on his way after a brief roadside stop.  There was simply no opportunity for the deputy to engage in any form of misconduct or negligence before the emergence of evidence that the deputy could reasonably prioritize over a high-beam violation:  the possible active consumption of an impairing substance by someone driving a vehicle on the public roadways.

¶25     In sum, the deputy's conduct was objectively reasonable and based on a good-faith belief that his conduct was lawful.  Further, the conduct did not appear to involve any level of negligence—much less the kind of "'deliberate, reckless, or grossly negligent,'" or "'recurring or systematic negligence'" that calls for exclusion.  *See Burch*, 398 Wis. 2d 1, ¶17 (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)).

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.