COURT OF APPEALS
DECISION
DATED AND FILED

May 31, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP1624**

STATE OF WISCONSIN

Cir. Ct. No.  2022CV1606

IN COURT OF APPEALS
DISTRICT IV

GEORGE KINSLER AND RAMONA A. ROHR,

   PLAINTIFFS-APPELLANTS,

 V.

CITY OF MONONA,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Dane County: DIANE SCHLIPPER, Judge. *Affirmed*.

Before Kloppenburg, P.J., Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1　PER CURIAM.　George Kinsler and Ramona Rohr (collectively, "Kinsler")[1] challenge the circuit court's determination that a raze order issued by the City of Monona ("the City") was reasonable.　Kinsler argues that, at the hearing on Kinsler's petition seeking to restrain the City from razing the building pursuant to WIS. STAT. § 66.0413(h) (2021-22), the court erroneously exercised its discretion by excluding certain evidence and by finding the City's witness more credible than Kinsler's witnesses.[2]　We reject Kinsler's arguments and affirm the court's order denying Kinsler's petition.

## BACKGROUND

¶2　Kinsler owns lakefront property in the City of Monona.　There is a residence on the property that is connected to a boathouse via a concrete tunnel.[3] The parties do not dispute that the building is in disrepair and is uninhabitable. After a building inspector for the City inspected the building, the City issued a raze order pursuant to WIS. STAT. § 66.0413(1)(b).　The raze order states that the building "is old, dilapidated or out of repair and is consequently dangerous, unsafe, unsanitary or otherwise unfit for human habitation and unreasonable to repair."　The raze order also states that the assessed value of the building is

---

[1] Although we generally refer to Kinsler and Rohr as "Kinsler," as should be clear from the context, we also sometimes use "Kinsler" to refer individually to George Kinsler.

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Separately, we note that although the document is titled a "complaint," and WIS. STAT. § 66.0413(1)(h) states that an affected person may "apply" to the circuit court for a restraining order, the parties refer to the document as a "petition," and we do the same.

[3] The City refers to the residence and the boathouse as a singular "building" because of the tunnel connecting them.　For ease of reference, we do the same.

$36,200, and that the estimated cost of repairing the building would exceed $150,000. The raze order gave Kinsler 30 days to raze the building.

¶3     Kinsler petitioned for an order restraining the City from razing the building. At the hearing on Kinsler's petition, Kinsler sought to show that the raze order was unreasonable because of the cost of razing the building and because of the diminution in the property's value that would result from having to build any new residence on the property further back from the lakeshore to comply with current zoning ordinances.[4]

¶4     Kinsler first called James Belanger as a witness. Belanger, who is a real estate agent, custom home builder, and registered home inspector, testified to the condition of the building and to the cost of razing the building. Although Belanger testified that the value of the property would be diminished because any new residence would have to be built further from the lakeshore to comply with current zoning ordinances, the circuit court sustained the City's objection to a question about the specific dollar amount of this loss in value, based on lack of foundation. The court also excluded Belanger's testimony as to whether the building should be renovated instead of razed. The court likewise excluded opinions on these topics averred in Belanger's affidavit.

¶5     Kinsler next called Francis Pohlkamp, Jr. Pohlkamp, who is a real estate attorney, real estate consultant, and broker, testified to the diminution in the property's value that would result from having to rebuild further from the

---

[4] The residence is 22 feet from the shore of Lake Monona. Current zoning ordinances require buildings to be at least 50 feet from the shore.

lakeshore. Specifically, he testified that the diminution in value would be in the range of $225,000 to $260,000.

¶6 Kinsler would have then called Joel Hefty to testify. In an affidavit submitted before the hearing, Hefty avers that he is the owner of Hefty Construction, Inc., which entered into an agreement to renovate the building. The circuit court did not allow Hefty to testify after determining that his testimony would be irrelevant, but the court admitted Hefty's affidavit, pursuant to the parties' stipulation, with the exception of Hefty's opinion as to whether the building should be renovated rather than razed.

¶7 The City's sole witness was Michael Parrott. Parrott is the City's building inspector who inspected the building and signed the raze order. Parrott testified as to the uninhabitable, unsanitary, and unsafe condition of the building and to the estimated cost of repairing it. Through Parrott's testimony, the photos that he took during his inspection were admitted into evidence.

¶8 The circuit court determined that the raze order was reasonable and denied Kinsler's petition for an order restraining the City from razing the building. In making this determination, the court stated that, "as a general matter," it found Kinsler's witnesses to be less credible than the City's witness because of the relationships that Kinsler's witnesses had with Kinsler.

¶9 Kinsler appeals.[5]

---

[5] The circuit court granted Kinsler's motion to stay the raze order pending appeal.

Separately, we note that the City's brief does not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential
(continued)

## DISCUSSION

¶10   WISCONSIN STAT. § 66.0413(1)(b)1. states that a "governing body, building inspector or other designated officer of a municipality may," "if a building is old, dilapidated, or out of repair and consequently dangerous, unsafe, unsanitary, or otherwise unfit for human habitation and unreasonable to repair, order the owner of the building to raze the building."  Section 66.0413(1)(c) states that "repairs are presumed unreasonable" if their cost exceeds 50 percent of the building's value under a particular formula ("the formula value").[6]

¶11   In rare cases, WIS. STAT. § 66.0413(1)(c) may be rebutted. *Posnanski v. City of W. Allis*, 61 Wis. 2d 461, 467-69, 213 N.W.2d 51 (1973).  In *Posnanski*, our supreme court stated that the presumption is rebutted "[o]nly if it can clearly be said that the operation of the legislative rule is without any rational basis in the individual case."  *Id.* at 469.  The *Posnanski* court, as an illustration, stated that "to refuse to allow the rebuilding of an irreplaceable historic or cultural site, merely because its restoration would exceed 50 percent [of the formula

---

numbering starting at '1' on the cover").  This rule was amended in 2021, *see* S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021), because briefs are now electronically filed in PDF format and electronically stamped with page numbers when they are accepted for e-filing.  As our supreme court explained when it amended the rule, the pagination requirement ensures that the numbers on each page of the brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief.  S. CT. ORDER 20-07 cmt. at x1.

Further, Kinsler improperly cites an unpublished per curiam opinion in violation of WIS. STAT. RULE 809.23(3).  We admonish counsel that violations of the Rules of Appellate Procedure may result in sanctions.  *See* WIS. STAT. RULE 809.83(2).

[6] Specifically, the repairs are presumed unreasonable under WIS. STAT. § 66.0413(1)(c) if their cost "would exceed 50 percent of the assessed value of the building divided by the ratio of the assessed value to the recommended value as last published by the department of revenue for the municipality within which the building is located."  Section 66.0413(1)(c) contains exceptions, not relevant here, for historic buildings and certain insured dwellings.

value], would be arbitrary and capricious." *Id.* at 468. The ***Posnanski*** court provided this illustration "[w]ithout attempting to foreclose the consideration of other factors in future cases." *Id.*

¶12 Kinsler does not dispute that the cost to repair the building would exceed 50 percent of the formula value, and that the presumption in WIS. STAT. § 66.0413(1)(c) applies. Instead, at the hearing, Kinsler attempted to rebut the presumption. Specifically, Kinsler argued that the raze order was unreasonable because of the cost of razing the building and the diminution in value that would result from having to rebuild further from the lakeshore to comply with current zoning ordinances.

¶13 On appeal, Kinsler does not argue that the raze order was unreasonable. Rather, he contends that the circuit court erroneously exercised its discretion in two respects: first, by excluding certain evidence at the hearing, and second, by finding the City's witness more credible than Kinsler's witnesses. We address each claim of error in turn and conclude that the court did not erroneously exercise its discretion.

*I. Exclusion of Evidence.*

¶14 We review a circuit court's decision to exclude evidence for an erroneous exercise of discretion. ***Martindale v. Ripp***, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698. The circuit court has broad discretion in making evidentiary rulings, which we will uphold "if the circuit court examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." *Id.* "If the circuit court fails to provide reasoning for its evidentiary decision," we "independently review[] the record to determine whether the circuit court properly exercised its discretion."

*Id.*, ¶29. "We will not find an erroneous exercise of discretion if there is a rational basis for a circuit court's decision." *Id.*

¶15 Even if the circuit court does erroneously exercise its discretion, we will disregard that erroneous exercise of discretion unless it affects a party's substantial rights. *Id.*, ¶69; WIS. STAT. § 805.18(1). A party's substantial rights are affected when "there is a 'reasonable possibility' that the error contributed to the outcome of the action or proceeding at issue." *Martindale*, 246 Wis. 2d 67, ¶71 (quoting *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985)). If a party's substantial rights are not affected, the error is harmless. *Martindale*, 246 Wis. 2d 67, ¶69.

¶16 Kinsler argues that the circuit court erroneously exercised its discretion. According to Kinsler, the court did so by preventing him from presenting evidence to rebut the presumption in WIS. STAT. § 66.0413(1)(c) because the court "concluded that evidence outside of the statutory formula was not relevant." Kinsler's argument is belied by the court's statements at the hearing, which show that Kinsler was not prevented from introducing evidence to attempt to rebut the presumption.

¶17 For example, after Kinsler finished calling witnesses, the City moved for an immediate ruling in its favor, arguing that Kinsler had not established that the raze order was unreasonable because Kinsler had not introduced any evidence to show that the cost of repairs to the building was less than 50 percent of the formula value. In response, Kinsler explained that he was attempting to rebut the presumption in WIS. STAT. § 66.0413(1)(c) by showing the cost of razing the building and the diminution in the property's value that would

7

result from having to rebuild further from the lakeshore. The circuit court denied the City's motion.

¶18    Additionally, after denying the City's motion, Kinsler objected to the admission of Parrott's inspection report. Regarding Kinsler's objection, the circuit court told Kinsler, "I understand your argument. [The report] … speaks to the elements that are necessary to find that the raze order is reasonable presumptively. I understand you're trying to get around the presumption."

¶19    Further, when ruling on whether the raze order was reasonable, the circuit court explicitly addressed Kinsler's attempts to rebut WIS. STAT. § 66.0413(1)(c)'s presumption:

> Certainly I agree … [that] the presumption is rebuttable. And it's my understanding that you're trying to show that even these repairs that are in excess of the formula, they're short of this extraordinary circumstance that shows that it's still reasonable to repair. And I think that's what your witnesses and your argument are suggesting to me.
>
> You presented evidence about the cost to the homeowners. And, you know, most specifically including the loss of the property value, if you have to set the house back to comply with the current zoning laws and the actual cost of the razing.
>
> But I do not believe that this is enough to overcome the presumption that the repairs are unreasonable based on the formula….

The court also stated, "I certainly have weighed the possibility of coming around this presumption."

¶20    The circuit court thus recognized that the presumption in WIS. STAT. § 66.0413(1)(c) is rebuttable, and that Kinsler was attempting to rebut the presumption, and the court did not prevent Kinsler from doing so. Indeed, as the

8

City argues, virtually all of the evidence that Kinsler presented was introduced to rebut the presumption. Kinsler did not attempt to show that the cost of repairs to the building was less than 50 percent of the formula value so as not to trigger the presumption. Instead, he endeavored to rebut the presumption by showing, under **Posnanski**, that applying the presumption would be arbitrary, capricious, and without a rational basis, which he sought to do by presenting evidence as to the cost of razing the building and as to the diminution of the property's value that would result from having to rebuild further from the lakeshore. *See Posnanski*, 61 Wis. 2d at 468-69. If, as Kinsler appears to argue, the court "concluded that evidence outside of the statutory formula was not relevant," then it is not clear why the court would have allowed Kinsler to introduce much of the evidence that Kinsler presented at the hearing.

¶21 Kinsler makes much of the fact that the circuit court stated that it would give Kinsler a "little bit of latitude" in rebutting the presumption in WIS. STAT. § 66.0413(1)(c). However, as we have explained, the court did not prevent Kinsler from presenting evidence in an attempt to rebut § 66.0413(1)(c)'s presumption. Consistent with this, although Kinsler interprets "a little bit of latitude" restrictively, we observe that the court's statement might also be understood colloquially to mean that the court would give Kinsler "some latitude" to attempt to rebut § 66.0413(1)(c)'s presumption.[7]

---

[7] Kinsler also argues that the circuit court's failure to consider the loss of the building's view and its tunnel—which Kinsler describes as "the very sort of irreplaceable and extraordinary circumstances contemplated by **Posnanski [v. City of West Allis**, 61 Wis. 2d 461, 213 N.W.2d 51 (1973)]"—is evidence that the court was "improper[ly] fixat[ed]" on the presumption in WIS. STAT. § 66.0413(1)(c). However, at the hearing, Kinsler did not argue that the loss of the view and tunnel was what rendered the raze order unreasonable. Instead, Kinsler's argument was that the loss of these features would result in a diminution in the property's monetary value that made the raze order unreasonable, an argument that the court did consider (and rejected).

¶22    As part of Kinsler's overarching argument that the circuit court prevented him from presenting evidence to rebut WIS. STAT. § 66.0413(1)(c)'s presumption, Kinsler argues that the court erroneously exercised its discretion by excluding "significant pieces of evidence," namely, certain opinions by Belanger offered through his testimony and in his affidavit, as well as Hefty's testimony and an opinion in his affidavit about whether the building should be renovated rather than razed.  We address each in turn.

*A.  Belanger's Testimony and Affidavit.*

¶23    At the hearing, Belanger testified that if the building were razed, the value of the property would be diminished because any new residence would have to be built further from the lakeshore to comply with current zoning ordinances, which would restrict the lake view.  The circuit court allowed Belanger to testify as to the diminution in the property's value, but sustained the City's objection for lack of foundation to Belanger's testimony as to how much that diminution in value would be.  The court additionally sustained the City's objection to Belanger's testimony as to whether the building should be renovated instead of razed, which the City argued was a "conclusory opinion."  In addition to not allowing Belanger to testify to these opinions, the court excluded these opinions averred in Belanger's affidavit, which was otherwise admitted.[8]

¶24    Kinsler appears to argue that the circuit court erroneously exercised its discretion by excluding Belanger's opinions as irrelevant.  However, in fact, the

---

[8] The averment in Belanger's affidavit that the circuit court excluded was that, "in [his] professional opinion," "if the lake home is razed[,] the property will lose approximately $300,000 to $400,000 in value."

court excluded Belanger's opinion regarding the specific amount of the property's diminution in value by sustaining the City's objection for lack of foundation. The City argues that this was not an erroneous exercise of discretion because Kinsler did not elicit testimony to show that Belanger had the knowledge, skill, experience, training, or education to testify as to the specific amount of the property's diminution in value, and because Kinsler did not elicit testimony to show that Belanger's opinion was the product of reliable principles and methods. *See* WIS. STAT. § 907.02 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case."). Kinsler does not respond to this argument, which we may take as a concession. *See **United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (failure by appellant to respond in reply brief to an argument made in respondent's brief may be taken as a concession). In any event, Belanger testified that he was a real estate agent, custom home builder, and registered home inspector, and that he had been in those professions for decades. However, Kinsler did not elicit any testimony to show that Belanger's opinion as to the specific dollar amount of the property's diminution of value was "the product of reliable principles and methods" that Belanger had "applied … reliably to the facts of the case." *See* § 907.02. In the absence of any argument to the contrary from Kinsler, we conclude that this provides a "rational basis" for the court's decision to exclude Belanger's opinion as to the specific amount of the property's diminution in value. *See **Martindale***, 246 Wis. 2d 67, ¶29.

¶25 Regarding Belanger's opinion as to whether the property was worth renovating, the circuit court sustained the City's objection when Kinsler asked Belanger, "[I]s the house worth renovating or is the house something that should be razed?" Later in the hearing, the City characterized such an opinion as "what we're deciding here today," and consistent with this, on appeal, the City argues that the opinion was properly excluded as "an inadmissible legal conclusion" for which foundation had not been established. Kinsler does not address this argument in his reply brief, and in the absence of an argument from Kinsler to the contrary, we conclude that the court did not erroneously exercise its discretion by excluding Belanger's opinion as to whether the building should be razed. *See United Coop.*, 304 Wis. 2d 750, ¶39 (failure by appellant to respond in reply brief to an argument made in respondent's brief may be taken as a concession); *see also* WIS. STAT. § 907.02 (stating that an expert witness may testify to "scientific, technical, or other specialized knowledge" only if that testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue").

### B.  Hefty's Testimony and Affidavit.

¶26 Kinsler argues that the circuit court erroneously exercised its discretion by preventing Hefty from testifying and by excluding the averment in Hefty's affidavit regarding his professional opinion that the building should be renovated instead of razed. The court did not allow Hefty to testify because, after reviewing his affidavit, the court concluded that his testimony would not be relevant. Hefty also averred in his affidavit that he owns Hefty Construction, Inc., that he visited the property before the hearing, that Hefty Construction, Inc. entered into an agreement with Kinsler to renovate the home, and that "once … the deconstruction is complete, then the renovations required to make the lake house habitable may take up to 24 months." In precluding Hefty's testimony, the

12

court told Kinsler, "I don't understand the relevance. It doesn't really go to the extraordinary circumstances that you're trying to convince me of." Kinsler responded that Hefty's testimony was relevant because "it goes to two issues. One, there's a contract and they're ready to move. And, two, he's going to talk about, in his experience, the structural integrity of the house." The court did not allow Hefty to testify, but the court admitted Hefty's affidavit pursuant to the parties' stipulation, with the exception of Hefty's opinion that the building should be renovated rather than razed, which the City objected to based on relevance and lack of foundation. The court explained, "[I]t would certainly call for some legal analysis …, in which case I don't think that he's capable of doing that, as far as whether it should be renovated instead of razed."

¶27 Kinsler argues that the circuit court erroneously exercised its discretion by preventing Hefty from testifying because, according to Kinsler, the court determined that the evidence was not relevant even though it rebutted the presumption in WIS. STAT. § 66.0413(1)(c) (that the repairs of the building were unreasonable because the cost exceeded 50 percent of the formula value).

¶28 The City counters that, with the exception of Hefty's opinion as to whether the building was worth renovating, which we address below, what Hefty would have testified to—namely, that he had contracted with Kinsler to renovate the building, and his opinion on the structural integrity of the house—was not excluded. The City correctly points out that Hefty's affidavit avers that Hefty had contracted to renovate the building, and that this averment in the affidavit was admitted. As to Hefty's testimony regarding the structural integrity of the building, which is not averred in his affidavit, the City correctly points out that the circuit court, later in the hearing and in response to Kinsler's objection to testimony from the City's witness as to the structural integrity of the building,

13

noted that Pohlkamp's report stated that there were no obvious signs of structural damage.[9] The City thus argues that Kinsler has not shown that his substantial rights were affected by the court's decision not to allow Hefty to testify. Kinsler does not address this argument, which we may take as a concession on this point. *See id.* In any event, we agree with the City. The information to which Hefty would have testified was admitted into evidence all the same; thus, the court's decision not to allow Hefty to testify, even if it were an erroneous exercise of discretion, did not affect Kinsler's substantial rights. *See **Martindale***, 246 Wis. 2d 67, ¶¶69, 71.

¶29 Kinsler does not develop an argument specific to the exclusion of Hefty's opinion in his affidavit regarding whether the property should be renovated. However, he appears to argue that the circuit court erroneously exercised its discretion by excluding this opinion as irrelevant. The City counters that Hefty's opinion as to whether the property was worth renovating, like Belanger's opinion on the same topic, is an inadmissible legal conclusion. Kinsler does not respond to this argument, and we conclude that the court did not erroneously exercise its discretion by excluding this opinion by Hefty for the same reasons that it did not erroneously exercise its discretion when it excluded this same opinion by Belanger—namely, because Kinsler does not respond to the City's argument that Hefty's opinion is "an inadmissible legal conclusion," and because the City's argument appears to be consistent with WIS. STAT. § 907.02's requirement that expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue."

---

[9] We observe that Belanger also testified that the building was "structurally sound."

14

## II. *Witness Credibility.*

¶30 At the hearing, the circuit court stated:

> I will say that as a general matter I did find the witness for the City to be more credible in this case. And there were a lot of specific numbers. And, again, I appreciate he's not an engineer, but he described his background. He described a lot of detail, provided the photos.
>
> The concern with the credibility of [Kinsler's] witness, Mr. Belanger testified that he had a personal relationship with the petitioner for, I think, 20-some years. And Mr. Pohlkamp also described, I think, a similar type of relationship. Both of them are in a real estate business of some sort, and the petitioner is, I guess, a lender, is what they both described him as.
>
> So though certainly I don't discount what they're saying, but I do believe that there's a potential bias to both of them because they have this long-term relationship with, perhaps, the petitioner as a lender. So that does give me pause for certain.

Kinsler argues that the court erroneously exercised its discretion by finding the City's witness more credible than Kinsler's witnesses.

¶31 The circuit court, as factfinder, "is the ultimate arbiter of the credibility of a witness." ***Posnanski***, 61 Wis. 2d at 465-66. A court's credibility determination "will not be questioned unless [it] is based upon caprice, an [erroneous exercise] of discretion, or an error of law." ***Id.*** "A circuit court erroneously exercises its discretion when it fails to examine the relevant facts, applies the wrong legal standard, or does not employ a demonstrated rational process to reach a reasonable conclusion." ***Borreson v. Yunto***, 2006 WI App 63, ¶6, 292 Wis. 2d 231, 713 N.W.2d 656.

¶32    The circuit court explicitly stated that its concerns with the credibility of Belanger and Pohlkamp arose from their relationships with Kinsler. Belanger testified that "[w]hen [he] started real estate in 1986, [Kinsler] was one of my first lenders I worked with. And we've had a good relationship for 37 years." Pohlkamp testified that Kinsler "was in the lending business. And we do real estate work, real estate appraisal work. And so over the years, [Kinsler] has been a client."

¶33    The circuit court did not erroneously exercise its discretion in making its credibility determination. The court examined the relevant facts and employed a demonstrated rational process to reach a reasonable conclusion. *See id.* We reject Kinsler's arguments to the contrary.

¶34    Kinsler argues that Belanger and Pohlkamp, like Parrott, provided "specific numbers," their respective backgrounds, and photos. Additionally, Kinsler appears to argue that the circuit court should have found his witnesses to be *more* credible than the City's witness because they considered factors that the City's witness did not and because the City "did not enter any evidence to contradict their conclusions." However, as stated, it is the province of the circuit court, as factfinder, to make such credibility determinations. *See, e.g.*, ***Valiga v. National Food Co.***, 58 Wis. 2d 232, 243-44, 206 N.W.2d 377 (1973) ("Appellants … argue that their experts are more qualified …. While such testimony places the issue in dispute, it does not command reversal. The weight of testimony and credibility of witnesses are matters for the trier of fact …."); ***Engel v. Dunn Cnty.***, 273 Wis. 218, 221, 77 N.W.2d 408 (1956) ("Appellant does not deny that plaintiffs' witness was qualified to give expert testimony but submits that its own expert is a better one…. The principle that is universally accepted is that the trier of the fact is the judge of the credibility of the witness and the weight to be given

to his testimony. Under this principle it is not too much to say that the better expert is the one whose view is adopted by the trial court." (citation omitted)).

¶35 Kinsler also argues that, after considering the relationship between Kinsler's witnesses and Kinsler, the circuit court should also have considered that Parrott had "an active financial relationship with [the City]." Specifically, he argues, "If the relationships between the parties and the various witnesses were compelling, then the circuit court was required to analyze all of these relationships—not just those associated with [Kinsler]." However, Kinsler provides no basis for us to conclude that the court was required to consider the City's relationship with Parrott. The difference between Parrott's relationship with the City and the relationships that Kinsler has with Belanger and Pohlkamp provides a rational basis for the court's credibility determination. Parrott works as the accounts manager for the inspection division of General Engineering Company, which has a contract with the City of Monona to perform building inspections. In contrast, Kinsler had longstanding relationships with Belanger and Pohlkamp as individuals. The court thus did not erroneously exercise its discretion in determining that Parrott's testimony was more credible than that offered by Kinsler's witnesses.

## CONCLUSION

¶36 For the reasons stated, we affirm the circuit court's order.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

17